St. Louis, Iron Mountain & Southern Railway Company

*v.* Harmon.

Opinion delivered March 23, 1908.

1. MASTER AND SERVANT—ASSUMED RISK.—A railway section hand, by taking service with the company, assumes the ordinary hazards of his employment, which would include the ordinary risks incident

to riding on freight trains, when his duties call him to do so; but he does not assume the risk of dangers caused by the negligence of the master or of servants of the company who are not his fellow servants, in the legal meaning of that term. (Page 506.)

2. SAME—NEGLIGENCE OF ONE NOT A FELLOW SERVANT.—Where a section hand was injured while being carried in a box car to his place of work under his foreman's orders, and his injuries were either due to the negligence of his foreman having control over him as not apprising the trainmen that he was in the car, or of the trainmen, who were working in a different department of the railway service, neither the foreman nor the trainmen were fellow servants of such section hand. (Page 506.)

3. SAME—DUTY OF MASTER TRANSPORTING SERVANT.—Although an employee being transported on a train to his place of work is not a passenger, within the common meaning of that term, the railway company owes him the duty of exercising ordinary care for his protection, and he is bound to exercise such care for his own safety as a person of ordinary prudence would exercise under like circumstances. (Page 507.)

4. SAME—CONTRIBUTORY NEGLIGENCE.—A railway employee being transported to his place of work in a freight caboose is not guilty of negligence as matter of law in standing up if there was no express rule of the company requiring him to sit down, and no place provided for him to do so. (Page 507.)

5. SAME—NEGLIGENCE OF MASTER.—Where a railway section hand, being transported to his place of work under his foreman's orders, was placed in a position of danger, and was injured by the negligence of the trainmen, the railway company cannot escape danger by showing that the particular servants whose act caused the injury did not know of his presence. (Page 508.)

Appeal from Cross Circuit Court; *Frank Smith*, Judge; affirmed.

STATEMENT BY THE COURT.

The plaintiff, J. L. Harmon, instituted this action against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for injuries caused by alleged negligence of the company's servants. He was employed by the defendant as a section-hand at Hamlin, Arkansas. On the day the injury occurred plaintiff's gang of workmen, of which one DeShea was foreman, was ordered to board a work-train at Hamlin for the purpose of doing work on the track outside of that section. The men, under orders of the foreman, boarded the train with their

tools, and were carried to Fair Oaks. They rode in a box car, which was used as a caboose. It had a short seat on one side, sufficient to seat two persons comfortably and three by crowding, and a long seat on the other side.

At Fair Oaks there was a car off the track, and the plaintiff and his gang were ordered to assist in getting the car back on the track, which they did. The derailed car was down on a spur, and the caboose of the work-train was set out, and the relief car was backed down to the derailed car on the spur. After the car was put back on the track, DeShea, the foreman, ordered the men to put their tools back on the train and get ready to go, as they were to go further with the worktrain. They put their tools on the caboose and boarded it themselves. The engine and a portion of the train then moved out of the spur, coupled to the caboose, set it out on the main track by itself, and then proceeded to do some switching. While the plaintiff was standing in the car, another car was cut loose from the engine and backed or kicked down the track, violently striking the caboose, and plaintiff was hurled to the floor and severely injured. Negligence of the servants of the defendant is alleged in causing or allowing the car to run against the caboose with such violence.

The defendant denied the allegations of negligence, and alleged that plaintiff's injury was caused by his own negligence or that of his fellow-servants.

A trial before jury resulted in a verdict in favor of the plaintiff, awarding damages in the sum of $458, and the defendant appealed.

*T. M. Mehaffy, J. E. Williams* and *S. D. Campbell,* for appellant.

1. There is no evidence of negligence on part of defendant.

2. If there was, it was the negligence of a fellow-servant.

3. Plaintiff was guilty of contributory negligence as matter of law. 71 Ark. 590; 83 Ark. 22.

4. It was error to refuse instructions asked by defendant. 76 Ark. 106.

*Smith & Smith,* and *J. T. Patterson,* for appellee.

1.  The negligence was not that of a fellow-servant.  67 Ark. 9; 77 *Id.* 1; 65 *Id.* 138.

2.  There was no contributory negligence as matter of law.

3.  The question of negligence or contributory negligence was for the jury, and they were properly instructed.  61 Ark. 555; 98 N. C. 494.

McCulloch, J., (after stating the facts.)  It is contended that the evidence was not sufficient to warrant a verdict in favor of the plaintiff, and that the court erred in refusing to instruct the jury peremptorily to return a verdict for the defendant.  In support of this contention, it is urged that the evidence fails to show any negligence on the part of servants of the company, or that, if any negligence is shown, it was that of plaintiff's fellow-servant, and that the undisputed evidence establishes contributory negligence on the part of the plaintiff himself.

There was, we think, evidence sufficient to go to the jury, and to support a verdict, that servants of the company were guilty of negligence in kicking the car with such violence against the caboose when they knew, or ought to have known, that the plaintiff and his fellow laborers were in the caboose waiting to be transported to their work.  They were ordered into the caboose by the foreman, whose orders they were bound to obey, unless obedience would subject them to danger so obvious that prudent men would not proceed.  The plaintiff, by taking service with the company, assumed the ordinary hazards of his employment, which would include the ordinary risks incident to riding on freight trains when his duties called him, but he did not assume the risk of dangers caused by the negligence of the master or of servants of the company who were not his fellow-servants, in the legal meaning of that term.  The evidence was sufficient to sustain a finding that plaintiff's injury was caused by an unnecessary degree of force in kicking the car against the caboose from which negligence could be inferred.  *Pasley v. St. Louis, I. M. & S. Ry. Co.,* 83 Ark. 22.

The negligence was that either of the foreman in failing to notify the trainmen that workmen were in the caboose, or of the trainmen who caused the car to be violently kicked against the caboose.  Neither of these were fellow-servants of plaintiff.  Of course, the foreman was not, as it is shown that he con-

trolled the actions of the men.   Members of the train crew were of a different department, and were not fellow-servants with plaintiff.  Kirby's Digest, § § 6658, 6659; *Kansas City, Ft. S. & M. Rd. Co.* v. *Becker.* 67 Ark. 1; *St. Louis, I. M. & S. Ry. Co.* v. *Rickman,* 65 Ark. 138.

Was the plaintiff guilty of contributory negligence?  This question was submitted to the jury under proper instruction, and we think that should have been done, instead of deciding, as a matter of law, that plaintiff was guilty of negligence.  It has been often held that, as there is more or less danger in riding on freight trains on account of the jars and jerks incident to the operation of such trains, it is negligent for a passenger to remain standing while the train is in motion or liable to be put in motion.  And where there is an established rule of the company, notice of which is properly displayed so that passengers may take warning, forbidding such conduct, violation of the rule by standing in the car for an unreasonable length of time constitutes negligence *per se.  Pasley* v. *St. Louis, I. M. & So. Ry. Co.,* 83 Ark. *22; Krumm* v. *St. Louis, I. M. & So. Ry. Co.,* 71 Ark. 590.

It has never been held by this court, nor do the authorities generally establish the proposition, that, in the absence of such a rule promulgated and posted by the company for the protection of passengers, standing in the car would, as a matter of law, constitute negligence, unless the circumstances were of such a nature as to render it obviously dangerous to stand.  It is the violation of the rule made for the protection of the passenger which is usually held, as a matter of law, to constitute negligence; otherwise the act of standing in the car is a question for the determination of the jury whether or not under the circumstances of the case it constituted negligence.

"The question of contributory negligence," says Mr. Hutchinson, "of the passenger by freight train most frequently arises, perhaps, in those cases when an injury has been received by the passenger while standing within the car.  To do so unnecessarily will bar the passenger from the right to a recovery if an injury is received which, but for such conduct. would not have happened.  But this does not mean that it is negligence *per se* to ride standing in a freight car, for circumstances often

arise in which the passenger may be justified in so doing. Each case must therefore be judged on its own particular facts." 3 Hutchinson on Carriers, § 1217.

The plaintiff was not a passenger, within the common meaning of the term, but the defendant owed him the duty of exercising ordinary care for his protection, and in testing the question of his care and prudence for his own safety the same rules apply as if he was a passenger. He was bound to exercise such care as a person of ordinary prudence would under like circumstances.

Now, aside from the question of there being no express rule of the company forbidding him from remaining standing in the car, the evidence shows or tends to show that it was not convenient for him to occupy any other position. There was no place for him to sit down. The long seat on one side of the car had lumber piled up on it so that it could not be used as a seat; and the short seat on the other side was filled with other occupants. At least, he could not find space to sit down without crowding the other occupants. Under these circumstances it cannot be said as a matter of law that he was guilty of negligence in standing up.

These questions were submitted to the jury under proper instructions. No error is found in the instructions given, nor in the refusal to give instructons requested by defendant. The substance of most of the refused instructions, was fully covered by those given by the court.

The following two instructions were refused:

"7. To entitle plaintiff to recover, it is not enough merely to show that the injury was caused by negligence of the employees of the defendant railway company; but the plaintiff must go further and show that the employees who kicked or dropped the car against the caboose in which plaintiff was had actual knowledge that plaintiff was in the caboose, and that his injury would be the natural or probable consequence of the kicking of said car against such caboose.

"10. The defendant, its conductor, engineer, and other employees controlling the switching and the movement of the train in question, had the right to rely upon the presumption that no persons were in the caboose in any position of danger,

and that all employees had notice of the work being done, and that no one would be in such caboose in a position of danger until notification from the conductor or some one of the train crew having authority to give such notice that the train in question was about to depart from Fair Oaks."

They were properly refused. The plaintiff went into the caboose upon the direction of his superior. He was rightfully there, and was entitled to the exercise of ordinary care for his protection. His employer could not put him in a place of danger and ignore his presence there. It owed him the duty of protection, and could not escape liability on account of failure to perform that duty merely by showing that the particular servants whose act caused the injury did not know of his presence.

Judgment affirmed.