HARE v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered January 8, 1912.

MASTER AND SERVANT—WHEN QUESTION OF NEGLIGENCE FOR JURY.—Where plaintiff, while riding on a push car in the course of his employment and holding on to a hand car which was being propelled by defendant's servants, was injured by the hand car being checked suddenly, without notice to him, causing him to fall and receive injuries, the questions whether defendant's servants were negligent, and whether plaintiff was guilty of contributory negligence, were for the jury, and it was error to direct a verdict for the defendant.

Appeal from Hempstead Circuit Court; *Jacob M. Carter*, Judge; reversed.

*Hamby & Haynie*, for appellant.

1. Appellee was negligent in running the hand car violently against the push car. It placed appellant in a position of peril by causing the posts on the push car to roll down and against appellant while the cars were in motion. At the least it was one of the causes which set in motion a train of

circumstances leading up to the injury, without which it wouꞯu not have occurred, and is one of the proximate causes of the injury. 1 L. R. A. 378; 3 L. R. A. 587; 54 N. E. 897; 6 L. R. A. 193; 90 Mo. 389; 71 N. E. 244; 41 Am. Rep. 51.

2. The act of appellant' in undertaking to hold the cars together was not contributory negligence. The running of the hand car against the car on which appellant was riding, causing the posts to roll down on him, placed him in a position of peril, as he, as a reasonably prudent man, understood it. Acting as he did under the spur of imminent danger, if he selected the more hazardous of two courses of action open to him, he will not on that account be adjudged guilty of contributory negligence; neither can appellee escape liability. 91 Ark. 388; 92 Ark. 554; 84 Ark. 246. See also 134 S. W. 957. Whether appellant was guilty of contributory negligence in attempting to hold the two cars together was a question for the jury. 92 Ark. 502; 131 S. W. 692; 134 S. W. 957; 135 S. W. 817; *Id.* 826; *Id.* 889; 136 S. W. 655; *Id.* 970.

3. Appellee's servants were negligent in suddenly reducing the speed of the hand car at the time appellant was injured; and none the less so that they, at time of the injury, stopped the car in the *usual and customary* way. They knew and appreciated the perilous position in which he was placed, as is shown by the testimony, and appellant had requested them to stop the car gradually, which, the evidence discloses, could have been done.

4. It was error for the court to refuse to submit to the jury the questions of negligence and contributory negligence. Giving the testimony its strongest probative force in favor of appellant, as is the law, it can not be said that there is no conflict on material issues, nor that reasonable minds might not draw different conclusions from the evidence. It was therefore a case for the jury. 89 Ark. 222; 135 S. W. 338; 89 Ark. 522; 91 Ark. 86; *Id.* 102; 92 Ark. 502; 62 Am. St. Rep. 132.

*W. E. Hemingway, E. B. Kinsworthy, J. H. Stevenson,* and *W. V. Tompkins,* for appellee.

1. On the day the injury occurred the appellant and a colaborer, the push car having been loaded with posts, pushed it out from the sidetrack to the main line, and, as the hand

car approached, they gave the push car a "shove" and jumped on it. The approaching hand car struck it, but not hard enough to dislodge the posts. This can not be classed as negligence, but was one of the usual and ordinary incidents of the service. But, if it was negligence, it was not the proximate cause of the injury, any more than the original loading of the posts on the push car, or other antecedent acts. 55 Ark. 521; 86 Ark 289; 87 Ark. 576; 91 Ark. 260; 58 Ark. 157.

2. In attempting to hold the cars together appellant assumed the risk incident thereto. The men were warned not to let the cars bump together again, and there is no presumption that they would have done so. No duty devolved on appellant to hold the cars, and in doing so he was a mere volunteer. 146 Ill. 614, 625; 76 Ill. App. 621; 145 N. C. 42, 67 S. E. (N. C.) 30; 70 N. H. 125, 85 Am. St. Rep. 618; 111 Ga. 460; 95 Ill. App. 576; 82 N. W. 1107; 56 Tex. 452; 32 N. W. (Mich.) 427; 48 La. Ann. 214; 32 Neb. 27; 134 Pa. St. 209; 95 Ark. 560-564; 90 Ark. 407; 81 Ark. 343-6; 55 Ark. 483. He was not confronted with an emergency, but on the contrary had every chance to avoid the danger if he had not voluntarily assumed the risk. 90 Ark. 387, 392; 1 Labatt, Master & Servant, § § 389, 391, 394; *Id.* § 405.

3. The fact that appellant fell off the car and was injured creates no presumption of negligence. His position did not appear to him nor to the other employees as dangerous. He knew they were approaching the place, and told Williams to stop the car gradually, but Cheek, the man who handled the brake, did not hear it, and if he was in a dangerous place Cheek did not know it. Under the facts, stopping the car in the usual way was not negligence. 89 Ark. 50.

4. There being no evidence of negligence on appellee's part, and the undisputed evidence showing that appellant assumed the risk, there was no question for the jury.

HART, J. This is a suit for damages alleged to have accrued to the plaintiff, N. C. Hare, as the result of personal injury received while in the defendant's employ as a member of a fencing crew on its railroad. The plaintiff had been working in the bridge department of the railroad before he commenced to build fence, and had been at work with the fencing crew for about twenty days before he was injured. The fencing crew

was working under the directions of B. K. Proctor. They had loaded a push car with thirty-five or forty fence posts, the posts being laid cross ways on the car. There was a little up-grade, and the plaintiff and Sam Williams were engaged in pushing the car of posts to the top of the grade. When they got to the top of the grade, the two men got on the push car, the plaintiff sitting on the rear end of it and Williams on the front end. A hand car on which were riding Proctor and the rest of the crew came up behind them and overtook them. The hand car bumped against the push car, and Mr. Proctor said, "Boys, don't hit that car so hard, you will knock those posts down on the boys." When the hand car got close enough again, the plaintiff reached out and got a hold of the handle of the car, and held it up so that it would not strike the car on which he was riding and held it in this way for a distance of between a mile and a mile and a half. The plaintiff held the cars apart with his right hand, and would put the posts back in position with his left when they started to fall. When they got near to the place where they were to stop, the plaintiff told Eugene Williams, one of the crew of the hand car, to stop it gradually, in order that he might not get hurt. Shortly after this the brakes on the hand car were set suddenly without notice to the plaintiff. This checked the speed of the hand car suddenly, and the push car went on. The plaintiff fell down under the hand car, and it ran over him and broke a rib and otherwise bruised him. This is the version of the affair given by the plaintiff in his own testimony.

Other witnesses for the plaintiff testified that Mr. Proctor, the foreman, was sitting on the hand car facing the plaintiff and within four feet of him. They say that when the hand car first came up to the push car, it bumped against it, and that Proctor then told them to keep the hand car right up with the push car, so that the posts would not run down and throw the plaintiff off of the push car. That the plaintiff then took hold of the hand car and held the two cars together for a distance of about a mile and a half, when Proctor said: "Stop the car." The brake was applied at once, and the hand car was suddenly checked. The checking of the speed of the hand car so suddenly caused the plaintiff to fall from his position on the push car, and he was injured, as stated by him. Some of them testified in

addition, that they heard the plaintiff tell them to slow up gradually when they started to stop the hand car, but that this was not done, and the car, as above stated, was stopped suddenly when Mr. Proctor gave the order, and without any warning given to the plaintiff that the speed of the hand car was to be checked.

The court directed a verdict for the defendant, and the plaintiff has appealed.

Under the facts and circumstances of this case, the negligence of the defendant and the contributory negligence of the plaintiff were jury questions. It is true the hand car was stopped in the usual and customary way, and counsel for the defendant insists that for this reason there was no negligence on the part of the defendant. Under ordinary circumstances, this would be true; but, under the peculiar facts and circumstances of this case, it can not be said as a matter of law that there was no negligence on the part of the defendant. The jury might have found that the foreman, and the other members of the crew, knew that it was being held to the push car by the plaintiff. It appears from the plaintiff's testimony that the speed of the hand car was checked by the act of the foreman without warning to the plaintiff, and this had the effect to precipitate him from his place on the push car and to cause his injury. The jury might have found that the plaintiff had no reason to anticipate the sudden stop, and we think the matter of the defendant's breach of its obligation to exercise ordinary care for his safety should have been referred to the jury. The question of whether or not the foreman exercised ordinary care must be ascertained with respect to the peculiar situation of the parties at the time.

Nor can it be said, as a matter of law, that plaintiff was guilty of contributory negligence in holding the two cars together. It appears from the testimony of all the witnesses that he was in no danger in doing this unless one of the cars was suddenly stopped. All the witnesses say that he told the members of the crew, who were handling the hand car, to stop it gradually. Except for the sudden stopping of the car, no injury would have been received by the plaintiff, and the question as to whether or not he was guilty of contributory negligence should have been referred to the jury. *St. Louis,*

*I. M. & S. Ry. Co.* v. *Wiggam,* 98 Ark. 259; *El Dorado & Bastrop Rd. Co.* v. *Whatley,* 88 Ark. 20; *Ala. Min. Rd. Co.* v. *Jones,* 62 Am. St. Rep. 121.

For the error in directing a verdict for the defendant, the judgment will be reversed, and the cause remanded for a new trial.