St. Louis-San Francisco Railway Company *v.* Barron.

## Opinion delivered December 15, 1924.

1. REMOVAL OF CAUSES—RIGHT TO REMOVAL.—The rule that where the right of removal to a Federal court·does not appear when defendant is called upon to plead, defendant may petition therefor at any stage of the proceedings when facts warranting it are shown to exist by pleadings, has no application where the complaint disclosed facts entitling defendant to such removal.

2. MASTER AND SERVANT—SAFETY APPLIANCE ACT—ASSUMED RISK. —The defense of assumed risk is not available in an action based on a violation of the Federal Safety Appliance Act.

3. COMMERCE—SAFETY APPLIANCE ACT—A railway company engaged in interstate commerce is liable to an employee injured in consequence of its failure to comply with the Safety Appliance Act (U. S. Comp. Stat. § 8605 *et seq.*) though the engine on which plaintiff was injured was not at the time actually engaged in interstate commerce.

4. MASTER AND SERVANT—TEST OF EMPLOYMENT.—In an action under the Safety Appliance Act, whether plaintiff was acting as employee at the time of his injury depends upon the language of the statute as construed by the Supreme Court of the United States.

5. MASTER AND SERVANT—EMPLOYEE RIDING HOME FROM WORK.— Under a custom permitting employees to ride home from work, an employee riding home on the employer's engine was entitled to be treated as an employee, rather than as a bare licensee or· trespasser.

6. EVIDENCE—RULE OF INTERSTATE COMMERCE COMMISSION.—The courts take judicial notice of the regulations of the Interstate Commerce Commission.

7. MASTER AND SERVANT—VIOLATION OF REGULATION—EVIDENCE.— Evidence *held* to warrant a finding that a railroad negligently permitted a valve on its tender to come within two inches of the handhold, in violation of the requirements of the Interstate Commerce Commission.

8. MASTER AND SERVANT—DUTY TO COMPLY WITH SAFETY APPLIANCE ACT.—A railroad company has a continuing duty to maintain its equipment so as to comply with the Safety Appliance Act and the rules of the Interstate Commerce Commission, and it is liable for any damages resulting from violation of that duty.

9. MASTER AND SERVANT—PROXIMATE CAUSE OF INJURY—JURY QUESTION.—Testimony of plaintiff that the gauntlet of his glove caught on a valve located within the prohibited distance from a handhold *held* to raise the question for the jury whether the railroad's negligence in permitting the valve to be so placed was the proximate cause of plaintiff's injuries.

10. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—The act of an experienced railroad fireman in alighting from an engine moving at the speed of two miles per hour was not contributory negligence as a matter of law.

11. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—Use by a fireman of gauntlet gloves, one of which caught on a valve as he was alighting from the engine, was not contributory negligence as matter law.

12. EVIDENCE—OPINION.—Testimony of plaintiff that, had the valve been in proper position, his glove would not have caught, *held* not inadmissible as an opinion, or, if an opinion, not objectionable where he stated the facts on which such opinion was based.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; affirmed.

*W. F. Evans,* and *Warner, Hardin & Warner,* for appellant.

The court erred in denying the petition for removal to the U. S. District Court. 75 Ark. 116; 152 Ark. 258. A case not removable when commenced may afterwards become removable. 246 U. S. 276; 169 U. S. 94. The petition to remove was in time when it was filed as soon as the amendment to the complaint was made proving citizenship in Arkansas. 212 U. S. 364; 89 Ark. 95; 209 Pac. 312. Upon proof of citizenship in this State the complaint is deemed amended to conform thereto. 88 Ark. 363. Defendant did not waive its right of removal by answering and going to trial. 27 R. C. L. § 2, p. 904; *Id.* § 5, p. 908. See also 96 Ark. 379; 36 Ark. 481. Plaintiff was a mere licensee, and no duty to him was violated by defendant. 113 Ark. 265; 172 Pac. 929; 56

Okla. 765; 156 Pac. 654; 77 Okla. 54; 4 Elliott on R. R. (3rd ed.) § 1869, p. 126; 3 Elliott on R. R. § 1789, p. 837; 212 Pac. 314; 195 Pac. 139, § 114 Ark. 218; 159 Ark. 423; 138 Pac. 325. Even if it be assumed that plaintiff was an employee, still there was no negligence shown upon the part of defendant. 220 Pac. 853; 155 Ark. 585; 219 Pac. 372; 221 Pac. 80. See also 133 Ark. 336; 80 Ark. 396. If any negligence of defendant was proved it was not the proximate cause of the injury. 220 Pac. 853; 154 Pac. 667; 179 Pac. 590; 184 Pac. 758; 113 Ark. 60; 106 Ark. 436; 90 Ark. 210. Plaintiff was guilty of contributory negligence, which bars a recovery by him. 163 Ark. 335; 48 Okla. 15; 41 Ark. 542; 90 Ark. 387; 93 Ark. 484; 198 S. W. 529. Plaintiff assumed the risk, and cannot recover. 170 Pac. 485; 254 U. S. 415; 135 Ark. 563. See also 153 Ark. 236; 137 Ark. 95; 149 Ark. 77. Instruction No. 2 was erroneous in that it assumed the existence of certain facts not proved in the case. 88 Ark. 20; 71 Ark. 518; 69 Ark. 489; 87 Ark. 471; 156 Ark. 465; 152 Ark. 90. There was no competent testimony to prove the existence of the interstate commerce rule relied on. Courts will not take judicial notice of such rules. 23 C. J. § 900, p. 102; 138 N. W. 809; 63 S. W. 323. Instruction No. 4 was erroneous in declaring that plaintiff did not assume the risks or dangers created by the negligence of the master or his servants, unless such risks and dangers were known to him and appreciated by him. 147 Ark. 95; 153 Ark. 236; 170 Pac. 485. The court erred in admitting opinion evidence. 66 Ark. 494; 82 Ark. 214. See also 85 Ark. 488; 97 Ark. 180; 133 Ark. 336.

*George G. Stockard* and *G. L. Grant,* for appellee.

By failing to file its petition to remove before answering, appellant waived its right to a removal. Lewis on Removal of Causes, 135; 169 U. S. 92; 133 U. S. 298; 246 U. S. 276; 260 U. S. 261; 260 U. S. 653. Appellee was an employee and not a licensee at the time he was injured. 161 Ark. 183; 98 Ark. 259; 78 Ark. 510; 85 Ark. 503; 115 Ark. 478; 44 Atl. 592; 74 N. E. 1097; 82

N. E. 705; 19 L. R. A. (N. S.) 717; 60 Utah 161. Plaintiff was protected by the Safety Appliance Act. It is sufficient that the company was an interstate carrier. 241 U. S. 33. The Federal statute imposes an absolute duty upon appellant to maintain the safety appliances in a secure condition. Roberts, Fed. Liab., vol. 2, § 834, p. 1368; 241 U. S. 33; 71 Ark. 445; 210 U. S. 281; 83 Ark. 591; 220 U. S. 559; 220 U. S. 580. The court will take judicial notice that appellant is an interstate carrier. 94 Pac. 138; 16 Cyc. 861; 23 C. J. 1823, p. 66; 605 E. 506. Under the Federal statute it is not necessary to prove negligence as in cases under the common law. 112 Ark. 305. See also 86 Ark. 244. The question of contributory negligence was properly submitted to the jury. 86 Ark. 244; Roberts, Interstate Liability, vol. 2; p. 1400. On the question of assumed risk, appellee was not required by law to make an inspection to find the defect. 98 Ark. 240. It was the unqualified duty of appellant to provide appliances as required by the statute. 242 U. S. 617; 241 U. S. 33; 86 Ark. 244. Courts will take judicial notice of safety appliance standards for the Interstate Commerce Commission. 20 C. J. 1897, p. 97, citing 107 Atl. 118; 149 Ark. 502; 90 Ark. 350; 130 Ark. 456; 134 Ark. 424; 137 Ark. 165; 141 Ark. 495; 150 Ark. 303. The evidence objected to by appellant cannot be classed as expert evidence, and is in line with the holding in 88 Ark. 484.

McCulloch, C. J. This is an action instituted by appellee against appellant to recover for personal injuries. The injuries occurred at a suburb of the city of Muskogee, in the State of Oklahoma. Appellee was a fireman in the service of appellant. He had a regular day run in the operation of a train, and worked extra at night as hostler in the yards at Muskogee, the duties of that position being to prepare trains for road service. On the evening of the day before appellee received his injury he returned to Muskogee from his regular run, and was called to serve as hostler during the night. This work was finished early next morning, and, after riding

on an engine from the roundhouse to the passenger station to put away the shovel with which he worked, he started for his home, riding an engine, from which he alighted while the engine was moving slowly, at a street near his home. He wore a pair of gauntleted gloves, which firemen were accustomed to wear, and, as he was about to alight, he took hold of the grab-iron on the edge of the tender, near which was an appliance called a globe valve, and, as he stepped off the engine, the gauntlet of his glove caught on some part of the valve, which caused him to swing around, and he fell to the ground. One of his legs was projected under the tender, and was run over by one of the wheels. It became necessary to amputate the leg below the knee.

Appellee charges that there was a general custom of long standing for employees to ride on the engines on their return to their homes after work, so that this privilege became a part of the contract of service, and that, while riding towards his home on this occasion, he was still in the service of his employer, and not a bare licensee or trespasser.

The engine on which appellee was riding was not actually engaged in performing an act of interstate commerce, but appellant is an interstate carrier, and it is claimed that liability of appellant falls within the control of the Federal statute known as the Safety Appliance Act. There is a rule of the Interstate Commerce Commission, adopted March 13, 1911, which prescribes that, on all locomotives in service, there shall be "a minimum clearance of two, preferably two and a half inches," for all handholds, and the charge of negligence in this case is that the globe valve in question at the time of appellee's injury was situated within less than two inches of the handhold on the tender, in violation of the rules of the Commission. It is alleged in the complaint that the globe valve was placed in dangerous proximity to the handhold, and it is also charged that the valve was permitted to get out of repair so as to lessen the distance below the requirements of the Com-

mission. There was a denial of the allegations with respect to the charge of negligence, and there was a plea of contributory negligence on the part of appellee, and also a plea of assumption of risk.

. The action was instituted in the circuit court of Crawford County, and tried in that court.

. The complaint contained an allegation that appellee was a citizen and resident of the State of Oklahoma, and that appellant is a Missouri corporation. There was a verdict in favor of appellee, assessing damages in the sum of $15,000. It developed from the testimony adduced by appellee that, at the time of the trial, he had become a resident of Crawford County, in the State of Arkansas, and thereupon appellant filed its petition and bond for removal of the cause to the Federal court on the ground of diversity of citizenship. The petition was overruled, and that ruling constitutes the basis for appellant's first assignment of error.

Counsel for appellant invoke the rule established by decisions of the Supreme Court of the United States that, where the jurisdictional facts upon which the right of removal exists do not appear from the face of the pleadings at the time the defendant in the action is called upon to plead, the petition may be filed at any stage of the proceedings when those facts are shown to exist by the pleadings. *Fritzler* v. *Boatmen's Bank,* 212 U. S. 364; *Great Northern Ry. Co.* v. *Alexander,* 246 U. S. 276. The difficulty with appellant's contention is that, according to recent decisions of the Supreme Court of the United States, the jurisdictional facts for removal existed under the original pleadings, in that the complaint charged that appellee was a citizen and resident of Oklahoma, and that appellant was a Missouri corporation. *General Investment Co.* v. *Lake Shore & M. S. Ry. Co.,* 260 U. S. 261; *Lee* v. *Chesapeake & Ohio Ry. Co.,* 260 U. S. 653. The contention therefore that the jurisdictional facts, according to the allegations of the original complaint, did not exist, is unfounded.

It is argued that, at the time of the commencement of the action, under the decisions of the Supreme Court of the United States in the case of *Ex parte Wisner,* 203 U. S. 449, there was no right of removal under the facts charged, and that the law was subsequently changed by another decision of that court.   This is not correct, for, under the decisions of the Supreme Court of the United States cited above, the law had always been, under the removal statute, notwithstanding what was thought to be the ruling in the Wisner case, that the facts set forth in the original complaint afforded jurisdictional grounds for removal of a cause to the Federal court.   In other words, there was no change in the law at all between the time of the commencement of this action and the filing of the petition for removal, and the fact that counsel misconceived the state of the law at the time appellant was first required to plead did not avert the effect of the failure to appropriately petition for a removal as a waiver of that right.   It follows therefore that the trial court was correct in denying the petition for removal.

It is next contended that the evidence is not legally sufficient to sustain the verdict, in that it fails to establish negligence on the part of appellant, and that it establishes beyond dispute that appellee was guilty of contributory negligence, and that he assumed the risk.

The plea of assumption of the risk may be easily disposed of on the ground that that defense is not available in an action involving a violation of the Federal Safety Appliance statute.   It is clear that that statute applies in this case, and is the sole test of liability.   Though the engine on which appellant was riding at the time of his injury was not actually engaged in interstate commerce at that time, the fact that the company was engaged in interstate commerce brings the case within the operation of the Federal statute so far as concerns the question of assumed risk.   *Texas & Pacific Ry. Co.* v. *Rigsby,* 241 U. S. 33.

The first consideration in testing the sufficiency of the evidence is the particular relation which subsisted

· between appellant and appellee at the time of the latter's injury, whether he was acting as an employee at that time, or whether he was a trespasser or a bare licensee. The character of this relation depends upon the decisions of the Supreme Court of the United States, if any have been rendered on that question. Though the injury occurred in the State of Oklahoma, the test of all substantive questions relating to liability must depend upon the Federal statute and the interpretation thereof by the Supreme Court of the United States. *N. O. & N. E. R. Co.* v. *Harris,* 247 U. S. 367. No decisions of that court have been brought to our attention directly deciding what the relation is upon the state of facts shown in this record, and we are therefore at liberty to look to the general principles of the law as announced by our own court in determining what the character of that relationship was. According to our decisions, appellee was, under the facts shown, neither a bare licensee nor a trespasser, but was an employee within the line of his duty in being transported from his place of work to his home. *Arkadelphia Lbr. Co.* v. *Smith,* 78 Ark. 505; *St. L. I. M. & S. Ry. Co.* v. *Harmon,* 85 Ark. 503; *St. L. I. M. & S. Ry. Co.* v. *Wiggam,* 98 Ark. 259; *Chicago, R. I. & P. Ry. Co.* v. *Smith,* 115 Ark. 473; *Boyle-Farrell Land Co.* v. *Haynes,* 161 Ark. 183. According to the evidence adduced, it was, at the time of appellee's injury and for a long time prior thereto, the general custom for employees to ride on the engines from their places of work to their homes. This was done by the direction of the superior agents of the company in charge at Muskogee. This custom became, impliedly, an element of the contract between the company and its servants at that place, and appellee was entitled to the privilege as a part of his contract. *Boyle-Farrell Land Co.* v. *Haynes, supra.* Appellee at that time, pursuant to that custom, had the right, under his contract, to ride, and was entitled to the same protection as that afforded to a passenger. *St. Louis, I. M. & S. Ry. Co.* v. *Harmon, supra.*

There was no evidence introduced as to the requirement prescribed by the Interstate Commerce Commission, but of that we take judicial notice. *K. C. S. Ry. Co.* v. *State*, 90 Ark. 343; *Cazort* v. *State*, 130 Ark. 453. The failure to comply with the requirements of the Commission created liability for any injury which proximately resulted.

This brings us to a consideration of the principal contention in the case, that the evidence does not show any negligence in failing to comply with the rules of the Commission with respect to the clearance distance between the globe valve and the grab-iron. Appellant introduced numerous witnesses who testified that the valve was affixed to the wall of the tender in an upright position, as it should be, and about six inches distant from the grab-iron, or handhold. Two of the witnesses introduced by appellee testified that they examined the appliance immediately after appellee's injury, and that the part of the valve nearest the grab-iron was "within two or two and a-half inches of the grab-iron." Those witnesses and others testified that the valve, when in proper place, was in an upright position from four and a-half to six inches distant from the grab-iron, but, at the time of appellee's injury, the valve had been allowed to become loosened, so that it leaned over at an angle of forty-five degrees in the direction of the grab-iron. This brought the valve at its nearest point less than two inches distant from the grab-iron. While the question is by no means free from doubt, we are of the opinion that this testimony warranted the jury in finding, from the situation described by witnesses, that the valve came within less than two inches of the grab-iron, which was in violation of the requirements of the Commission. There was a continuing duty on the part of appellant to maintain its equipment in condition so as to comply with the Federal statute and the rules of the Interstate Commerce Commission, and it is liable for any damages resulting from violation of that duty. *Texas & Pacific Ry. Co.* v. *Rigsby*, 241 U. S. 33; *Louisville & Nashville Ry. Co.* v. *Layton*, 243 U. S. 617.

Counsel for appellant argue with much earnestness that the evidence adduced shows beyond doubt and is undisputed that the valve could not have become loose without causing a water leak, and that the undisputed evidence shows that there was no leak. If the evidence was undisputed, this contention would be sound, but the testimony adduced by appellant to the effect that the valve was not bent and that it could not have been bent over without causing a leak, and the testimony adduced by appellee to the effect that the valve was, in fact, bent over towards the grab-iron at an angle of forty-five degrees, constituted a direct conflict in the testimony, which made it a question for the jury to determine which state of facts existed. We cannot say therefore that the testimony was undisputed. The jury might have found from the testimony that the nut holding the valve in place became loose, permitting the valve to turn over in the direction of the grab-iron. Appellee testified that the gauntlet of his glove hung on the wheel of the valve as he attempted to alight from the engine, and this made a question for the jury to determine whether or not the failure to comply with the rules of the Commission with respect to the clearance distance between the valve and the grab-iron was the proximate cause of appellee's injury.

The issue as to contributory negligence was submitted to the jury, and we are of the opinion that the evidence was sufficient to justify a finding in favor of appellee on that issue. There was evidence tending to show that the train was only moving at a speed of about two miles an hour when appellee attempted to alight. He was an experienced railroad man, and it cannot be said as a matter of law that it constituted negligence for him to alight from the engine while it was moving at that rate of speed.

It is argued that the wearing of gloves with gauntlets was, under the circumstances, an act of negligence, but we cannot agree to that view. The evidence shows that the gloves were of a kind usually worn by trainmen,

with gauntlets to protect their wrists, and it did not, as a matter of law, constitute negligence to wear such an article of apparel.

The failure to comply with the requirements of the Interstate Commerce Commission can be deemed the proximate cause of appellee's injury, for the reason that the grab-iron was in place for the use of the train-men in entering and alighting from the engine, and the requirement for certain clearance was for the specific purpose of protecting the men while so using the grab-iron.

We are of the opinion therefore that the evidence was sufficient to sustain the verdict on every issue in the case.

The assignments of error with respect to the court's charge and refusal to give instructions requested by appellant are very numerous, and we deem it unnecessary to discuss them, for the reason that all of the rulings of the court in that regard are in conformity with the law as herein announced.

There is another assignment of error with respect to the ruling of the court in permitting appellee, over the objections of appellant, to state that, if the valve had been in proper position, his glove would not have caught on it. The objection to this testimony is based on the contention that it was merely the opinion of a non-expert witness, and was therefore inadmissible. If we so treat the nature of the testimony, it does not follow that it was inadmissible, for the witness at the same time stated the facts upon which he based his opinion. We do not, however, think that the statement constitutes a mere opinion of the witness, for he was describing to the jury his own act in taking hold of the grab-iron, and it was a statement of a fact to say that, under the circumstances and the situation of the grab-iron, his glove would not have hung on the valve if it had been in an upright position with the proper clearance.

On the whole case, we are of the opinion that the record is free from error, and the judgment is therefore affirmed.